Case No. 14-1055 et al. NBCUniversal Media, LLC Petitioner v. National Labor Relations Board Mr. Salvatore for the petitioner, Mr. Salterra for the respondent Good morning. May it please the Court, my name is Paul Salvatore from the Prosecutor's for Petitioner, NBC. With me today are my colleagues Mark Harris and Bernie Plumb. The National Labor Relations Board placement of the content producers into a single mythical bargaining unit must be vacated. The Board's ruling deprives NBC of the benefit of its 60-plus year bargain with NABIT, that there's 12 bargaining units across the country, not a nationwide single unit. Its result-oriented rush to establish a single unit, in doing that the Board abdicated its responsibility to follow the law and should be reversed for two principal reasons. First, the collective bargaining agreement's language and architecture are clear on its face that there are multiple units here. This Court is not a rubber stamp and reads the collective bargaining agreement de novo and owes no deference to the Board in that regard. Second, 60 years ago the Board construed the very same operative provisions of this collective bargaining agreement and found that it created multiple units. Well, the agreement has changed, so it's not exactly the same agreement. Your Honor, the agreement has changed. And history, as the Board has said on many occasions, can create a nationwide unit if that's the way the parties have negotiated. Yes, Your Honor. But in any event, we're talking about the 2006 agreement forward, so whatever happened 60 years ago is irrelevant. I don't agree with you, Your Honor. There are no changed circumstances here. Well, that's the issue. The record is devoid of any changed circumstances. That's the issue. Well, let me give you my question so you know what you want to address. The collective bargaining agreement is not the same as it was before because in 2006 there were changes. And I don't know how you, I mean, it's an interesting case. I don't know how you distinguish the situation from, let me ask you a question first. There are no separate signed agreements for the articles, right? That's correct. The articles are simply part of the master agreement, right? Well, they're actually called agreements. They're not articles. And they're separate agreements. They're not signed. They're no signatories, right? They're not signed, but they each are called an agreement, all 12 of them. And they each have a scope of unit clause. Right, but the scope of unit clause is given force only because the master agreement says that's the way we're going to set up the master agreement. And that's what the... And let me just tell you what I'm looking at so you know what to, you want to respond to it. The master agreement is the only document we're looking at here. There are no separate signed agreements. The only signed agreement is the master agreement. The only union representative, therefore, is the international. And the master agreement, as is often the case, General Motors being a prime example that the board had exactly the same kind of situation which referred to scope clauses. And the board said, so what? That there can be scope clauses with respect to the various local areas. It's still a master agreement covering all of these units. And units was the word used in General Motors. This is different than General Motors, Your Honor. And let me tell you why. When you look at this agreement, you see that there are... which is on page J207 of the record going from J207 to J211. You see the architecture of this agreement. There are 12 separate agreements. Each has a separate scope of unit clause. This is the way it has been since the board ruled in 1955. And the board can't just backhand its own precedent just because it's decades old. If you look at that case, there are no changed circumstances here. The record is devoid of any changed circumstances. Can the articles be negotiated apart from the master? The articles are negotiated in a centralized bargaining that goes on, but that has gone on since 1955. But let me just finish with the international. The international and representatives of the locals. Right, but the international sets the framework. There can't be any articles that can be created until that master agreement has been negotiated by the international, right? The negotiations, as I understand it from the record, occur together. No, but let me be very clear in what I'm asking you, because I did read the record carefully. My understanding is none of these locals can create a binding article until that master has been signed by the international union. They don't have any independent force. They're all part of the master agreement. They bargain together. Right, but what I'm trying to ask you is, and if I have the history wrong, point me to something and I'll go look at it. Okay. A local can't come in during those central negotiations and say, you guys do whatever you want to do. We're going to negotiate our article. It's a separate agreement, and we're done when we're done. They have to wait until the master agreement is done, the international union, and then all of these other arrangements that are made part of the master agreement are then negotiated. They're negotiated together, and as you know, two unions can serve as joint bargaining representatives, but this is how it was done since at least 1955. If you look at the board's decision in 1955, the NABIT lawyer testified, and he testified about the bargaining process. And if you look at that testimony, which is in the board decision at page 3, it's exactly the same centralized process that existed then that exists now. The way the union bargains is outside the control of NBC. We can't control how the union structures its bargaining. And the board admitted at page 32 of its brief, when it's talking about changed circumstances, and there are none here. The record's devoid of it, and they admit that the bargaining process is decades old. In fact, it goes back to 1955, and there they found multiple units, and if they found multiple units there based on that bargaining process, there should be multiple units here. The ratification process was the other thing they cited, and they admitted on page 32 of their brief that it's longstanding. NBC doesn't control the ratification process. As you know, that's a matter of union democracy and union bureaucracy, and the way NBC finds out about it, whether the agreement is ratified, is they get a phone call. We don't know the process the union goes through, and we shouldn't be held to that. In any event, as you point out, it was done unit by unit, and these general articles that are listed on page 207 of the record are terms and conditions that cover kind of an umbrella that are general terms that cover all of the different units. The specific agreements for each unit, and if the court could take a look with me at page J208 of the record, you'll see in the table of contents, which really shows the architecture between J207 and J211 of the agreement, that each of these separate units stands as a separate agreement with a separate recognition clause, which is what the scope of the unit is. So there are 12 separate recognition clauses here. As you have, at least in my view, the problem there is, and it is similar to general motives, the separate statement as to who is within each local component is given credence only because the master agreement says so. The master agreement says that's the way this contract is going to be written, and so when you want to figure out scope, what we've decided to do is, with respect to each of the local pieces of the overall agreement, you're going to find them there, and we'll describe it at those places. That's the other way to look at it. So I don't know, you don't win anything by saying, because there's no signatories to those local agreements. What you're calling agreements, there's no signatories there. There's nothing to indicate that the local union has an enforceable right with respect to anything there, as opposed to the international. You're right, there's no signatories. However, if you look at the page JA215, the preamble of the agreement, and you'll see, starting reading right there, that the agreement is very clear and not ambiguous in any way whatsoever, that it talks about, it calls it agreements, it talks about, in the general articles, and the individual articles, a description of each bargaining unit. JA215 calls them articles. I'm sorry? They're called articles in the master agreement. JA215, they're called articles. Well, in the table of contents, they're called agreements. Yeah, well, but then you look, they're articles, and an agreement normally has signatories. It does, but this is the history. The only signatories here are to the master agreement. Your Honor, if you look further in the recognition clause, you see that it says, the applicable scope of unit, all caps clause, that acknowledges that there are more than one unit here. This is the history of this collective bargaining relationship. If you go back. You're taking a word unit as a term of order as if it has legal significance. It may simply be a descriptive word here, and that's what it appears to be. In 1955, that was good enough for the board, and now in 2011, it was not good enough for the board. In the NBC case. Were there separate signatories in 1955? No. This is the exact same structure, Your Honor. The board said in 1955 that it made a careful study of the master agreement, quote, unquote, and then goes on to say on page three and four of its opinion that the terms of the master agreement clearly preserve the separate identity of the various groups bargained for, and goes on to say we know particularly in this connection the language of the master agreement. Same parties, same preamble, same recognition clause, which now the acting regional director somehow found ambiguous, but the board in 1955 didn't have any problem with. Same unit references, same centralized negotiating history. There's nothing changed here. I just wanted to ask one other thing because I wasn't clear on this. Is your position that NAVIT, the national union, represents each of the separate units as you refer to them, or that they are represented by locals? It's done together. This is coordinated bargaining, and that's a lawful and permissible way that bargaining occurs under the National Labor Relations Act. You can have two unions that serve as joint bargaining representatives. So is your position that, for example, Article M, the Newswriters Agreement in Los Angeles, which has its own scope of unit, all your arguments, is your position that NAVIT represents them in coordination like it normally does, local unions do the kind of local things, it teams up with them, but at the end of the day NAVIT represents them, or that they are only represented by the local union? NAVIT represents them. Each of these individual units. The NAVIT local represents them, and the NAVIT local is affiliated with the international NAVIT, which is, I believe, based in Washington. So that's the structure of when we do bargaining, we have to go to each local. That's how NBC negotiates. They talk to each local. When they want to do something under this agreement, they want to move the Jimmy Fallon show from Los Angeles to New York, they have to conduct negotiations with the LA local, then they have to come to New York and conduct negotiations with the New York local. That's the way this structure has been. It's been this way since at least 1955, and the board is totally disingenuous in the way it has presented the cases here. This all arose from a request for information that the company didn't comply with, and I thought that was the genesis of the unfair labor practice. There was a request for information from the union, NBC didn't comply, and then there was the unfair labor practice, and that's what led to this. NBC committed a technical unfair labor practice here, which enabled us to take this appeal. And the technical one was a failure to provide information? A failure to provide information, a failure to bargain. The unit clarification decision from the acting regional director had already come down, and we were disagreeing with that. So in order to get to this court, you have to commit a technical unfair labor practice. I understand that. That was 2009, and it's 2016. Is that even still a live dispute? Absolutely. I assume you've had subsequent agreements. Do they preserve this issue, or is there clarification on the subsequent agreements? That's an important point. There is seven years that have gone by here, and in light of that, the number of content producers has changed. The way content producers are used has changed. Is the relevant contract language still all the same? The relevant contract language here is the same since going back before 1955. The preamble is the same. The recognition clause is the same. The unit structure of multiple units is the same. This is a situation where that architecture has continued, and the parties have relied on it in terms of their relationship. What about Article VI, which talks about the bargaining unit? I'm sorry. Seniority, layoffs, and rehires? Article VI refers to the bargaining unit. The transfer of work. I'm sorry. The transfer of work provision. Yes. The transfer of work provision, Your Honor, is one of the Board's three woefully insufficient excuses for finding ambiguity. I guess my question is why is it woefully insufficient? Your Honor, it's because they seize on the fact there's no letter S after the word unit in this clause. Does that seem significant? No, it's not significant. And that clause, read in context, is part of the general section, so the fact there's no S there makes sense because you're talking about taking work from one of the 12 individual units, and so you have to read the clause in that way. In any event. This is any work or function covered by this agreement, not by what you claim are the individual agreements. The transfer talks about this agreement, the whole, and then, as Judge Tatel says, it doesn't say. It's funny. When it's to your advantage, adding the S is a big deal. When the S isn't there, you minimize it. Well, and then it goes on over and over again. It says bargaining unit, bargaining unit, bargaining unit, bargaining unit in that provision. In one provision, Your Honor, and we pointed out in our brief five pages of provisions. Wait a minute. What Judge Tatel is trying to ask you is, is this creating a situation where the contract is ambiguous, and this clause came in later, well after 1955. And we don't believe that that clause, read correctly, creates any ambiguity, and regardless, a missing S in one clause in a 300-page, 70-year-old collective bargaining agreement, not written by lawyers, doesn't make it ambiguous. And so even when you go, if you find it ambiguous, which you shouldn't, as we've talked about, when you look at what the board says of the changed circumstances from the extrinsic evidence, they're not changed. There's no change in the bargaining process. There's no change in the ratification process, which is not in NBC's control as it is. So this agreement has been for years. Were there individual certifications in the old days? Several. There are several, and they're in the record. There were two different units that the board issued individual certifications on, but as you know, the parties can agree to what the unit scope is, and that's what happened here. They were organized after World War II or around World War II, and as it rolled forward, more and more units were put in place. You know that the board has a – Has a place to create the single whole. No. There's a presumption that local and multiple units that are geographically diverse and that have different types of jobs are multiple units. They're not a single unit. This is not a CBS situation. In fact, in CBS, which the board cites and relies on heavily, one of its key cases, if you read footnote 9, you'll see that the board there in 1974 distinguished CBS as a single nationwide unit, because that's the network that does have a single nationwide unit, as opposed to ABC and NBC, and the NBC and the ABC cases from 1955 are in the footnote showing that it's distinguished. The substantial evidence must account for whatever fairly detracts from its weight. Yeah, thanks. We'll hear from the board, okay? Thank you, Your Honor. Good morning, Your Honors. Greg Sotar for the National Labor Relations Board. The board's order does not alter the parties' bargaining relationship in this case. What the board simply did is to recognize that over the decades of bargaining relationship that Mr. Sotar spoke of, the parties have evolved into treating all union-represented employees as part of a single unit. And the board did this by applying its own well-established law, first looking at the terms of the contract to determine whether they were clearly and unambiguously indicating that there was one or multiple units. So you agree with the other side that it started out as individual units, right? That is probably the case. Well, they had individual certifications. It must have been the case. Well, there were a couple of individual certifications. Others were probably recognized voluntarily. But they started out as individual units. Yes, and that's usually what happens. These units get aggregated together as the union recognizes them. Or not. That's what we're trying to figure out. Right, right. So what happened that dramatically changed what the history was? Well, Your Honor. Where's the evidence of it? The issue isn't a change in circumstance. The issue is whether the contract itself. I understand. So they'll point us to something in the contract. They've pointed us to many things, which refer to individual units. Okay. So what arguments do you have? Well, the first and most important argument is the Transfer Award Clause and the fact that it refers to this agreement and this bargaining unit. What about the – I mean, you found the one place in there that it says this agreement. Throughout the whole rest of the agreement, look at page 15 to 16 of the blue brief. They go on for pages listing all the places where it refers to multiple units. That's right. You found the one example, and what's your response to counsel's explanation for why there was no S there? Well, let me just answer your first issue with the fact that the units go on for pages and pages in their brief. Ambiguity is not determined by counting how many times the word unit appears with or without an S. What you have to do is – Well, this may not be dispositive, but it's certainly powerful evidence, isn't it? Sure, but you have to look ultimately at the whole contract and see if it creates an ambiguity. Now, in this case, where's the ambiguity? And, by the way, we also pointed out the term disagreement in the singulars scattered all over the place in this contract. And, in fact, in the preamble, it says disagreements in the plural, and then there's a more recent. The last sentence was just clearly more recent because it deals with saying that when we use the word his, it also means her. Then the term appears in the singular, this agreement. Now, turning to your second question, why is it important? The transfer of work, this agreement is all about NBC's ability to transfer work from some employees to other employees. Because NBC is a nationwide company, they create a nationwide product. Why it matters is that that clause creates two universes, one with all employees covered by the union, one with all the other employees who aren't. And it says you can't transfer work that is bargaining unit work to outside of the units and give it to non-covered employees. Now, if this clause were not read, were to apply, as Mr. Salazar said, to each individual unit, then it would conflict with side letter 50, which says, which specifically allows NBC to transfer work from newswriters to technical employees such as cameramen and so on and so forth when they have to produce, when in the course of their primary job function, it can be useful for them to do those other functions as well. And so if we were to read the transfer of work clause as argued by NBC, then that would restrict NBC's ability to have that flexibility and to allow the various employees to do all of the job functions that are necessary for them to produce NBC's content. And what are the meanings of all of the individual articles, each of which talk about the, quote, scope of the unit? Well, Your Honor, we don't deny, I'm not here to represent, Your Honor, that the bargaining agreement clearly and unambiguously establishes a single unit. Yeah, I got you. Okay. You're right. Your position is it's Article 6 renders it ambiguous, right? Well, Article 6, the fact that, as I said, these are the... And then what would, if you're right, what would be the meaning of side letters 50 and 51? Well, as I said, if side letter 50 goes along with Article 6 in the sense that it allows transfer of work among employees within the different units... But that's not what the transfer of work provision is addressing. No, it's not. So what? What I meant to say... We should look at them as part of a kind of a single notion. They're not part of a single notion. They address entirely different things. One is transfer of work is bargaining unit employees versus non-unit employees. Right. 50 and 51 are talking about people who are clearly in some bargaining unit, either the whole or individuals, and whether they can move from one location to another. That's right. And what 50 and 51 do is that they create, they help create this single unit, this single bargaining unit, by facilitating the ability of employees to do work that other units also perform in the context of their own job functions. Look at Section, the third provision of 50. It's referring to other than his or her own, unless the work is combined with... I mean, it's talking about individual units in there, not one unit. Yes, it's talking about individual units in the sense of... Even in the context of a single bargaining unit, Your Honor, let's assume that we're right and that you really have a single bargaining unit. You still have employees with different job functions who do different things. And you still have to police how those employees are going to do their work when their job functions overlap. And that's what these provisions do. Your argument, as I understand it, is that Article 6 sidebars, side letters 50 and 51 all came in 2006. Is that right? No, I don't believe so. I don't think the record is clear as to when they appeared. So you don't know when the transfer of work provision came into effect? No. Was it there in 1955? No, if it was, it wasn't referenced in the board's order. But it might have been there in 1955? It could have been. Really? The 1955 agreement isn't part of the record. Well, you've got to know better than that. The transfer of work provision, I thought... I've got to go back and look that. I thought your argument was that this is a recent addition and evidence of changed circumstances. There is no evidence that the transfer of work provision existed in 1955. I don't, but there is no evidence as to when it was added, unless opposing counsel can correct me. I'm not aware. One thing that I'm concerned about is in 1955, at least, the board thought attached particular weight. We note particularly the language of the intent and purpose clause, and I think you would agree that that is identical. Yes, except for that last little sentence that I pointed out that refers to disagreement. Yes, that's not going so much to the... that's a rule of construction for the agreement. It's not going to the intent and purpose of the parties, that last sentence. It's just a... No, I understand. Right, so the intent and purpose of the parties, is that no longer due the particular weight? Has the board explained why that's not particularly persuasive now, when it was then? Well, you have to look at the contract as a whole, and if that... I don't think the contract as a whole helps you a lot, because there's an awful lot more units, plural... That's true. ...and references than there are in agreements, plural. I understand, but again, we... the board did not find that this contract unambiguously supports a single unit. All the board found is that it does not unambiguously support multiple units. Let me try to figure out why it's... what it takes to make it ambiguous. If you can... let's assume that scope of work clause was not there in 1955. The transfer of work clause? I'm sorry, transfer of work. I apologize. The transfer of work clause was not there in 1955, and that came in. Is that... if you didn't have... let's say if you didn't have the transfer of work clause, take that out of this agreement, would you then be governed by the 1955 decision? Well, first, obviously, as you know, I can't speak for the board or what the board would have found in that case, but I would...  I would probably be shaking a little more right now than I am. That's... How's that for an answer? Is it true that ambiguity exists as long as you can find one clause or a couple times somewhere, ambiguity, or don't... I guess I really don't know or quite even understand what the board's test is for ambiguity. I mean, it could be that this new thing comes in and that... that or that combined with the bargain in history is enough, but I thought your position was we have to find ambiguity first, and then we can look at bargaining history. Absolutely. Okay, so we can't... That's what Louisiana Dock says. Okay, and so then is that enough? I thought ambiguity normally required two reasonable readings of the document as a whole. Right. And as opposed to simply finding a provision that uses some different language. Well, yes, but... and that's been our point. Obviously, we focus on the transfer... the reason we focus on the transfer of work clause besides the fact, obviously, that it's the one that most supports our position and the one that the board relied on... It's really about the only one that does... the others are really just occasional scattershot references. That's, yeah, fair enough, although I would argue that the side letters also show, you know, this integration into a single unit. I know you didn't text your... But going back to the transfer of work clause, this is not a meal provision clause. This is not some kind of ancillary thing. This governs... It's not a what? It's not a meal provision clause or some kind of ancillary little clause off to the side. This is really the heart of the agreement. NBC, as I said, is kind of like General Motors. It manufactures a product nationwide, different bits and pieces. Actually, I guess I had a question. Is that really true? I thought part of the issue here was that unlike General Motors, which is making the same cars for Virginia as it is for Maryland, the whole point is that NBC isn't producing just national product. It produces regional product. It produces local product. Things aren't... And particularly with the evolution that was at issue here, it's producing things for taxicabs in some jurisdictions, and it really is not a single national product in the way that cars are. No, the national product is news. Now, that product may be different from one locale to another, but the news that is distributed... Is this just news? I mean, I thought you were talking about Dr. Oz and things like that. I'm sorry? We're talking about Dr. Oz Show and things like that in here, too. Well, yeah. Fair enough. It is... Right, so it's programming, which isn't a single national product. Various kinds of programming. Right. But these programs, as you said, the Dr. Oz Show, at some point it was made in New York. At other times, it was made in other cities. Those things move around. And also, the feeds, where they gather their content, whether it be for news or for entertainment, that's from all over the country. And all of that coalesces into a single product, which is then a whole amount of product of information, which is then distributed among the various markets as NBCC's fit. In your footnote 17, you have lots of references to this agreement. Do you know whether any of those were there in 55? No, but what I can tell you, Your Honor, is that in 1955, the board actually pointed out that there was a reference to these agreements in the plural, and it italicized that in its decision. Now, we did not say, as NBC represents, that this was the basis of the board's decision, but it was notable enough for the board to italicize it and point it out. Now, I'd like to – I'm sorry. I don't want to interrupt your point, but I had one other textual question. I'm sorry. On JA215, which is your intent and purpose clause, I was just trying to understand Roman II, where it talks about individual articles, which will contain the description of each bargaining unit, and then says, which shall not be affected hereby. What does the which shall not be affected hereby clause mean? Does that mean the master agreement doesn't affect the description and scope of each bargaining unit? I just don't know what that was. That is how I read it, which is that if you have a unit of newswriters, people who have a certain – who are defined as doing a certain job function, that individual agreement defines what their job function is. And it's not affected by the master agreement. It's not affected by the master agreement. So the description of each bargaining unit is not affected by the master agreement. That's what that language means? That's what that language appears to mean. But that's the same language that was there in 1955. Yeah. And since then, there's been other additions that have changed the way the contract looks overall. But doesn't that then seem to say that really the definition of bargaining units is driven by the individual articles and not the single master agreement? That's what it would appear to say, but we wouldn't be having this debate if there wasn't some ambiguity in this contract. Certain provisions do point to multiple units, absolutely, but others point to a single unit. The one that you have said is the most important one. I'm sorry? Including the one the board in 1955 placed the most weight on. The board has said that typically you start with the recognition clause, and in 1955 the board also looked at that one. But as we said, the board in 1955 didn't discuss the transfer of work clause, found that these agreements existed as opposed to this agreement. There have been changes, as said. I realize my time has gone over, but I'd like to beg your indulgence for just a minute. Unless we have any more questions, you are out of time. I'm sorry. Thank you. Does Mr. Salatori have any time left? No. You can take two minutes. Four quick points, Your Honor. The issue, to go back to Judge Edwards' first question, this is not a GM situation. It's not a CBS situation where there's a single nationwide unit. The issue is not whether there are multiple agreements. The parties here are party to one agreement, but they created, over time, 12 separate bargaining units. And the fact that there are not separate signatories on every one is, we would say, is really irrelevant. The NABID filed four separate UC petitions here, and the board consolidated them. That shows the nature of what's happening. Second, there's no ambiguity here. The transfer of work clause and the side letter 50 and 51, side letter 50 and 51 helps NBC. It shows that, in fact, there are multiple units. You wouldn't need side letter 50 and 51, which recognizes that you can transfer people from one unit to another, and if somebody's transferred, they remain a member of the original bargaining unit, unless there were multiple units. Third, the board mentioned Louisiana Dock. I just have to point out that Louisiana Dock supports NBC's position. There, the board held that you need clear evidence, clear evidence, to create a single nationwide unit. The board, at page 29 of its brief, concedes that Louisiana Dock's recognition clause, which created multiple units, is similar to NBC and NABID's recognition clause. Judge Balette pointed out that the individual articles prevail. That is very important here because that's where the units are, and that's the way this structure has been since 1955. Do you know if the transfer of work provision was in the 1955 agreement? I don't believe it was. I believe it did come later, but the transfer of work provision doesn't create any ambiguity here, Your Honor. It just shows that you can give non-bargaining unit work to NABID or vice versa. And so the plain language of the agreement is architecture, which is very important. The 60-year-old NLRB precedence between these parties, the NLRB ruling should be reversed. You're out of time. Thank you. Thank you. The case is submitted. Please call the next case.
judges: Tatel, Millett, Edwards